IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

DONNA JACKSON                                                                PLAINTIFF

V.                              CASE NO. 5:14-CV-05317

ROCKTENN CP, LLC                                                            DEFENDANT

MEMORANDUM OPINION AND ORDER

Now pending before the Court are Defendant RockTenn CP, LLC's ("RockTenn") Motion for Summary Judgment (Doc. 22) and supporting documents (Docs. 23, 24). Plaintiff Donna Jackson filed a Response in Opposition (Doc. 25) with supporting documents (Docs. 26, 27, 29), and thereafter, RockTenn filed a Reply (Doc. 30). For the reasons explained herein, the Motion for Summary Judgment is **GRANTED**.

I. BACKGROUND

Jackson, a female resident of Benton County, Arkansas, brings this lawsuit alleging employment discrimination on the basis of her age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.* A number of depositions have been taken in this case and are attached to the summary judgment briefing submitted by the parties. From a review of the depositions and exhibits attached to the briefs, it is clear that the record is well developed and the material facts are undisputed.

Jackson was hired by RockTenn, a company that manufactures corrugated packaging products, in October of 2009. She was hired on an at-will basis to serve as a Customer Service Manager, working out of the company's plant in Rogers, Arkansas. Her job involved supervising seven to nine Customer Service Representatives at a time, who

were physically located at RockTenn plants in Arkansas and Oklahoma. When Jackson was hired, she was 55 years old.

Jackson's direct supervisor was Dean Frey, who was 43 years old when Jackson was hired. Frey testified in his deposition that he made the final decision to hire Jackson, with input from human resources and the Rogers plant's general manager. (Doc. 23-2, p. 17).[1] A number of other candidates had applied for the position, including Elizabeth Gardner, who at the time was 30 years old and had been employed by the company for five or six years. (Doc. 25-3, pp. 2-4; Doc. 23-2, p. 18). However, Jackson was selected over the younger candidates as the most qualified, and Frey signed her offer letter. Jackson agrees that at the time she was hired, her age was not a factor. Instead, she believes that her age later became a problem for the company in 2012. (Doc. 23-1, pp. 7-8). Despite this belief, however, she never complained, either formally or informally, to the company or to an outside agency about age discrimination while she was employed at RockTenn. *Id.* at p. 11.

In Jackson's 2010 performance review, she scored a 3.5 on a scale of 1.0-5.0, with 5.0 being the highest score. (Doc. 29-2). In her 2011 performance review, her score dropped to a 3.0. (Doc. 23-4, pp. 8-9). Her performance continued to deteriorate in 2012, when she scored only a 2.0 on her evaluation. *Id.* at pp. 10-12. Finally, in 2013, she scored a 1.0, meaning she "fell below expectations" and was an "unacceptable performer."

---

[1] Jackson disputes whether Frey actually hired her, since the human resources manager from RockTenn, Tim Goeke, called her to let her know the company would make her an offer of employment. (Doc. 23-1, p. 20). However, Jackson relies only on her speculation, rather than evidence, to counter Frey's testimony that he made the final decision to hire her. *See id.*, Jackson's Dep. ("Do I know [who made the ultimate hiring decision]? No. I would not.").

2

*Id.* at pp. 13-16. Following her 2013 evaluation, in November of that year, Jackson's supervisor Frey wrote her a letter, explaining in greater detail Jackson's performance issues, including problems he observed concerning her relationships with those she supervised and with her customers.[2] In particular, Frey noted that Jackson was "difficult to work with"; created "strained relationships" among those she supervised, leading to an "inefficient work climate"; and generated "turmoil" in the office due to her inflexibility, something Frey described as "totally avoidable." *Id.* at pp. 17-18. A few weeks later, on December 17, 2013, Frey wrote Jackson a follow-up email, giving her more "critical feedback," including specific examples of Jackson's poor performance. (Doc. 25-13). Frey attributed Jackson's unacceptably low score on her 2013 evaluation to her "unwillingness to step-up and take ownership of some of the expanded duties of the Customer Service Department," her lack of involvement in "[h]elping lead SPM meetings and working with CSR's to 'right' the planning board," her failure to engage her team "on observed leadership voids," and her inability "to build a team through [her] leadership." *Id.* Frey observed that these criticisms were "not new," and "the message [of poor leadership] has been consistent." *Id.*

Jackson maintains she was first aware of her employer's dissatisfaction with her performance during her 2012 evaluation. (Doc. 23-1, p. 36). In that evaluation, Frey stated that her leadership style "has caused conflict with many internal customers," resulting in "'workarounds' to avoid the need to work with Donna on customer service issues." (Doc.

---

[2] Jackson maintains that this November letter and her 2013 performance review were edited in some respect by Goeke and Frey's supervisor, Mark Rickard, prior to being presented to Jackson.

3

23-4, p. 11). In the same evaluation, Frey described Jackson as "adversarial and confrontational," attitudes that resulted in "lost respect from her direct reports." *Id.* Finally, Frey observed that "[t]he lack of cohesion in the [customer service] department has created far too many mistakes and missed opportunities." *Id.*

Although Jackson generally disputes that she was a poor performer when she worked for RockTenn, she admitted in her deposition that certain employees under her direct supervision missed major orders from two different accounts, events she characterized as mere "oversights." *Id.* at pp. 63-65. She also agrees that RockTenn genuinely believed that her performance was substandard. *Id.* p. 36. Jackson feels she bears some responsibility for those performance problems, but also believes these problems were "not 100 percent [her] fault." *Id.* at p. 43.

Once her performance issues were identified in 2012, Jackson admits she received some degree of guidance and coaching from Frey, as well as from the company's sales and plant managers. *Id.* at p. 46. Jackson was unsatisfied with the coaching or training she received, however, and she maintains Frey either ignored her specific request for a meeting to discuss the issues raised in the 2012 evaluation, or otherwise failed to adequately address her requests for more guidance in improving her managerial skills. *Id.* at p. 41.

In January of 2014, approximately 30 days after Jackson received the 2013 performance evaluation, she was terminated at age 59. Once Jackson was fired, Frey assumed her job responsibilities for about a month, and then Jackson's replacement, 53-year-old Connie Reynolds, began working in the position. Notably, Reynolds and Jackson

4

share substantially the same educational background, in that neither one is college-educated. Although Reynolds had not previously worked in customer service for RockTenn, she had been an employee of the company for the past 30 years and had served as Senior Accountant, performing various customer-related duties pertaining to billing and finance for many years.[3]

Jackson timely filed a charge of age discrimination with the Equal Employment Opportunity Commission ("EEOC"), and she received her right-to-sue letter on August 11, 2014 (Doc. 17-1). She filed her Complaint in this Court on October 20, 2014, and an Amended Complaint (Doc. 17) on March 11, 2015. The Amended Complaint alleges that Jackson was fired after being given 30 days "to correct some vaguely described problems with her performance." *Id.* at p. 2. It further asserts that Jackson's immediate supervisor, Frey, "did not give Plaintiff any objective performance goals" and "would not meet with Plaintiff to discuss ways to improve her performance." *Id.* Next, the Amended Complaint states that an employee who was supervised by Jackson and was substantially younger was hired as a Pre-Pricing Specialist at around the time Jackson received her last, and poorest, performance evaluation, even though "Plaintiff was qualified for and would have accepted this position had it been offered to her." *Id.* at p. 3. Finally, the Amended Complaint claims that Jackson would not have been fired "but for her age," and was replaced by "a substantially younger employee who had no relevant experience for the position." *Id.*

---

[3] Reynolds testified in her deposition that RockTenn's management told her they felt she was qualified to be Customer Service Manager because of her "organizational skills, [her] attitude, [and] the length of time [she'd] been with the company." (Doc. 25-7, p. 3).

5

Jackson now asserts damages for age discrimination in the form of back pay, liquidated damages, reinstatement or front pay, and attorney fees and costs. Below, the Court will set forth the legal standard governing ADEA claims and then will explain why Jackson is not entitled to relief as a matter of law.

## II. LEGAL STANDARD

When a motion for summary judgment is filed, the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When no direct evidence of discrimination exists, age discrimination claims pursuant to ADEA are analyzed under the *McDonnell Douglas* burden-shifting framework. *Hilde v. City of Eveleth*, 777 F.3d 998, 1004 (8th Cir. 2015) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973)). "To establish age discrimination, a plaintiff must prove by a preponderance of the evidence that age was the but-for cause of the employment decision." *Id.* at 1003.

Under the burden-shifting framework, the employee must first establish a prima facie case of discrimination. *Id.* at 1004. If she makes her prima facie case, the burden then shifts to her employer to offer a legitimate, non-discriminatory reason for the actions taken. *Id.* If the employer meets this burden, it is up to the employee to produce evidence sufficient to create a genuine issue of material fact that the employer's "'proffered nondiscriminatory justifications are mere pretext for intentional discrimination.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1046 (8th Cir. 2011) (quoting *Pope v. ESA Servs., Inc.*, 406 F.3d 1001, 1007 (8th Cir. 2005)). Proving pretext is no simple feat. To

6

successfully do so and defeat a motion for summary judgment, an employee must present evidence that "the employer's explanation is unworthy of credence . . . because it has no basis in fact. . . . [or] by persuading the court that a [prohibited] reason more likely motivated the employer." *Hilde*, 777 F.3d at 1004 (alterations in original; citation omitted).

### III. DISCUSSION

#### A. Prima Facie Case

In order for Jackson to make a prima facie case of age discrimination, she must submit proof that she: (1) was at least 40 years old, (2) was qualified to perform her job, (3) was terminated, and (4) was replaced by another person sufficiently younger to permit the inference of age discrimination. *Olsen v. Capital Region Med. Ctr.*, 713 F.3d 1149, 1155 (8th Cir. 2013). The parties agree that the first, second, and third elements of the test have been met. The fourth element, however, is lacking here. As explained in further detail below, the facts surrounding Jackson's hiring, firing, and replacement by a younger employee do not indicate that an inference of discrimination can be drawn, as Jackson was not replaced by someone "substantially younger" than herself.

The fourth element of the prima facie test concerning the age of the plaintiff's replacement was explained in some detail by the Supreme Court in *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312 (1996). In *O'Connor*, Justice Scalia writing for a unanimous Court clarified that "an inference [of discrimination] cannot be drawn from the replacement of one worker with another worker insignificantly younger." *Id.* at 313. If the prima facie burden were that easy to meet, then "very thin evidence—for example, the replacement of a 68-year-old by a 65-year-old" would be sufficient to allow a plaintiff to proceed with her lawsuit. *Id.* "As the very name 'prima facie case' suggests,

7

there must be at least a logical connection between each element of the prima facie case and the illegal discrimination for which it establishes a 'legally mandatory, rebuttable presumption.'" *Id.* at 311-312 (internal quotation and citation omitted). It follows, therefore, that if a plaintiff merely points out that there is an age difference between herself and her replacement, this differential alone may not be enough to establish a prima facie case. The fact that a plaintiff is older than her replacement could be meaningful, or it could be "an utterly irrelevant factor," depending on whether other evidence of discrimination exists. *Id.* at 312. For these reasons, a *substantial* age difference "is a far more reliable indicator of age discrimination." *Id.* at 313.

After *O'Connor* was decided, the Eighth Circuit held in *Schiltz v. Burlington Northern Railroad* that a five-year difference in age as between a plaintiff-employee and a replacement was insufficient to establish the fourth element of the prima facie test under the surrounding facts. 115 F.3d 1407, 1413 (8th Cir. 1997). Nearly a decade later, the Eighth Circuit held that a six-year age difference was similarly insufficient. *See Wittenburg v. Am. Exp. Fin. Advisors, Inc.*, 464 F.3d 831, 840 (8th Cir. 2006). Both the *Schiltz* and *Wittenburg* courts analyzed the surrounding facts and circumstances in each case before coming to the conclusion that the age differences were insignificant.

In *Schlitz*, for example, the plaintiff-employee applied for a number of jobs in the company and was denied at each turn. 115 F.3d at 1413. Once the facts were more critically assessed by the trial court, however, it was clear that the employer had filled two of the open positions with workers the same age or older than the plaintiff, and four positions with workers who were younger than the plaintiff. Of the similarly situated younger workers who were hired over the plaintiff, the difference between the plaintiff's age

8

and the age of the youngest hire was only five years, which was not "substantially younger." *Id.* Similarly, in *Wittenburg*, the court analyzed the employer's overall procedure in implementing a reduction in force. When the employer hired an employee who was younger than the plaintiff, approximately two months after the reduction in force occurred, the court concluded that the six-year age difference between the plaintiff and the new hire was not significant enough to establish a prima facie case of discrimination, in light of all the other facts. 464 F.3d at 837-40.

In Jackson's case, she agrees that when she applied for her job as Customer Service Manager, she competed against candidates well under the age of 40, and her supervisor, Frey, hired her—a 55-year-old—nonetheless. Jackson also agrees that, from the time she was hired until her negative 2012 evaluation, her age was *not* a factor that RockTenn considered. It strikes the Court as incredible that age could suddenly *become a factor* for RockTenn after 2012, given that Frey, the supervisor who hired Jackson, described her at the end of 2012 as "adversarial and confrontational" and the cause of "far too many mistakes and missed opportunities," yet did not fire her until *over a year later*, thus raising the inference that he afforded her more than a year to improve her poor performance. (Doc. 23-4, p. 11). It is equally incredible that the age difference between Jackson and her eventual replacement could support her prima facie burden, given that her replacement was: (1) in her 50s, just like Jackson, (2) had a lengthy 30-year tenure with the company, and (3) was not unqualified for the job.

All of these factors taken together indicate that the six-year age difference between Jackson and her eventual replacement was not "substantial," and the fourth element of the prima facie test has not been met.

## B. RockTenn's Non-Discriminatory Reason for Termination and Jackson's Showing of Pretext

Even if the Court were to assume that the age difference between Jackson and her replacement was substantial, and that Jackson set forth a prima facie case of age discrimination, RockTenn has clearly met its burden of establishing a legitimate, non-discriminatory reason for her firing: poor job performance. Jackson somewhat grudgingly admits in her deposition that she is at least partly to blame for the various "oversights" that took place among her staff while she was Customer Service Manager, all of which her employer directly attributed to her inadequate leadership. She was apprised of her employer's dissatisfaction with her ability to manage her staff and with her ineffective leadership style as early as her 2012 evaluation, and her performance only declined over the next year. She can point to no specific training opportunities that other Customer Service Managers in the company were given—or that Jackson was denied.

Because RockTenn established a legitimate, non-discriminatory reason for Jackson's termination, the burden of proof now shifts back to Jackson to show pretext. This she cannot do, since no reasonable jury could conclude that age discrimination was the but-for cause of Jackson's termination. Jackson unconvincingly argues that a jury could infer age discrimination from RockTenn's alleged "failure to articulate the 'strategy' and 'solid approach' discussed at a meeting among its managers" with respect to Jackson's deficient job performance. (Doc. 27, p. 6). However, having reviewed the performance evaluations and ensuing correspondence between Jackson and Frey, the Court disagrees that it is "not easily explained" why RockTenn fired Jackson. *Id.* Jackson

admits she understood why the company was displeased with her performance—she simply disagrees that her management skills were lacking.

The Court also rejects Jackson's contention that the jury could infer age discrimination from the fact that she was discouraged by Frey and possibly others from applying for the Pre-Pricing Specialist job in late 2013, around the time of her termination. Jackson believes that, but-for her age, she would have been awarded the Pre-Pricing Specialist job—despite the fact that she chose not to apply for the position and, thus, was never considered. With respect to this argument, the Court finds that no disparate treatment can be inferred from the company's decision to discourage Jackson from applying for another job within the company, as Jackson was acknowledged by management to be a poor employee whose performance had declined over the course of two years and was not improving. Firing Jackson was a legitimate business decision made by RockTenn, and the Court will not second-guess it. As the Eighth Circuit observed in *Hill v. St. Louis University*, 123 F.3d 1114, 1120 (8th Cir. 1997) (internal citation omitted):

> ADEA and Title VII are not meant to transform "at will" employment into perpetual employment where equal treatment is guaranteed to all employees and termination is legal only "for cause." Nor do these statutes entitle courts to "sit as super-personnel departments," second-guessing the wisdom of businesses' personnel decisions. Rather, these statutes serve the narrow purpose of prohibiting discrimination based on certain, discreet classifications such as age, gender, or race. These statutes do not prohibit employment decisions based upon poor job performance, erroneous evaluations, personal conflicts between employees, or even unsound business practices.

As Jackson has failed to carry her burden of proof on summary judgment, her case will be dismissed.

11

## IV. CONCLUSION

Defendant RockTenn CP, LLC's Motion for Summary Judgment (Doc. 22) is **GRANTED**. This case is **DISMISSED WITH PREJUDICE** with final judgment to be entered contemporaneously herewith.

**IT IS SO ORDERED** on this 8th day of January, 2016.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE